# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

MIGUEL ANGEL COMPEAN,

           Petitioner,

    v.

TRACY JOHNS, Warden,

           Respondent.

CIVIL ACTION NO.: 5:17-cv-30

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Miguel Angel Compean ("Compean"), who is currently housed at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 2.) Respondent filed a Response, (doc. 9), and Compean filed a Reply, (doc. 12). In their briefs, the parties dispute whether the Federal Bureau of Prisons ("BOP") properly calculated the service of Compean's sentence issued by the United States District Court for the Western District of Texas. As detailed below, Compean failed to exhaust his available administrative remedies prior to bringing this issue to this Court. Thus, I **RECOMMEND** that the Court **DISMISS without prejudice** Compean's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Compean *in forma pauperis* status on appeal.

However, as explained below, if the Court does not dismiss Compean's Petition for failure to exhaust, the Court will need to expand the record to address the merits of Compean's Petition. Respondent's substantive arguments and supporting documentation regarding Compean's sentencing calculation are incomplete and give rise to grave concerns regarding the

BOP's calculation of Compean's sentence. Given these concerns, I **ORDER** Respondent's counsel to provide a copy of this Report and Recommendation to the Section Chief for Sentence Computations at BOP's Designation and Sentence Computation Center.

## BACKGROUND

On December 7, 2012, an officer with the Greenville, Texas, Police Department arrested Compean for violating a promise to appear and the traffic violations of driving while license invalid and driving with a child under eight not secured by a safety belt. (Doc. 9-2, pp. 5–18, 40.) These misdemeanor offenses were charged in the Justice Court, Precinct 2, Collin County, Texas, in Case Numbers 01-TR-12-00382, 01-TR-11-05935, 01-TR-11-05936.[1] (Id.) Though the Court does not have complete records for these misdemeanor cases, it appears that Compean posted bond after his arrest, as the docket reports for all three cases include the notation "Posted Bond." (Id. at pp. 9, 13, 17.) However, Compean remained in the Hunt County Jail. (Id.) Compean entered nolo contendere pleas in these three cases on December 8, 2012. (Id.) He received fines of: $155.00 in Case Number 01-TR-11-05935; $21.75 in Case Number 01-TR-11-05936; and $250.00 in Case Number 01-TR-12-00382. (Id.) It appears Compean paid these fines by some method, as the docket sheets list his fine amount balance as "$0.00." (Id.) The Justice Court did not sentence Compean to any time in custody on these charges. Rather, the

---

[1] Texas Justice Courts have original jurisdiction in criminal cases punishable by a fine only or punishable by a fine and another sanction not consisting of confinement or imprisonment. Tex. Code Crim. Proc. Ann. § 4.11; see also Sullo & Bobbitt, PLLC v. Abbott, No. 3:11-CV-1926-D, 2013 WL 1949835, at *4 (N.D. Tex. May 13, 2013) (outlining judicial process of municipal and justice courts in Texas, including fact that Justice Courts only have jurisdiction to impose fines); Cooksey v. State, 377 S.W.3d 901, 904 (Tex. App. 2012) ("Justice courts do not have jurisdiction over criminal violations that impose confinement.").

case dockets indicate that he was released from the Hunt County Jail on December 10, 2012, and the documents regarding these cases include notations of "Time Served." (Id.)

On December 6, 2012, the day before the Greenville, Texas, Police Department arrested Compean on the state traffic charges, United States Magistrate Judge David Counts of the United States District Court for the Western District of Texas signed a criminal complaint charging Compean with the federal offense of providing false information to a federal firearms licensee. Compl., United States v. Compean, Case No. 7:12-mj-453 (W.D. Tex. Dec. 6, 2012), ECF No. 1. Judge Counts also issued a warrant for Compean's arrest. Warrant, United States v. Compean, et al., Case No. No. 7:12-cr-340 (W.D. Tex. Dec. 19, 2012), ECF No. 2. However, the United States also sought, and the Court issued, a writ of habeas corpus *ad prosequendum*. Application, Order, & Writ, United States v. Compean, Case No. 7:12-mj-453 (W.D. Tex. Dec. 6, 2012), ECF Nos. 3, 4, 5. That writ directed the Greenville Police Department to deliver Compean to the United States Marshals and for Compean to remain in the Marshals' custody during the proceedings in Case Number 7:12-mj-453, the federal criminal complaint case then pending against Compean.[2] Id.

On December 11, 2012, the United States Marshals Service took custody of Compean. (Doc. 9-2, p. 28.) The arrest warrant was returned unexecuted with a notation that it was "superceded By Writ Dated 12/6/12." Unexecuted Arrest Warrant, United States v. Compean, et al., 7:12-cr-340 (W.D. Tex. Dec. 19, 2012), ECF No. 6. It does not appear that Compean had an initial appearance or any other hearings in Case Number 7:12-mj-453, and the case was

---

[2]  It is not clear from this record why the Government sought and received a writ of habeas corpus *ad prosequendum*, which was directed to the Greensville Police Department on December 6, 2012, when the Police Department did not arrest Compean until the following day. The Government stated in its application on December 6, 2012, that Compean was already in the Greenville, Texas, Police Department's custody, but the arrest and booking records state that he was actually arrested on December 7, 2012. (Doc. 9-2, pp. 5–7.)

terminated on December 19, 2012. Docket, United States v. Compean, 7:12-mj-453 (W.D. Tex. Dec. 6, 2012).

Also on December 19, 2012, the grand jury for the Western District of Texas returned a ten-count indictment against Compean and two co-defendants. Indictment, United States v. Compean, et al., 7:12-cr-340 (W.D. Tex. Dec. 19, 2012), ECF No. 9. The grand jury charged Compean with committing: conspiracy to smuggle goods from the United States (Count One); giving a false statement in the acquisition of a firearm (Counts Four, Six, Seven, Eight, Nine, and Ten); and aggravated identity theft (Counts Five and Seven). Id. On December 26, 2017, Judge Counts entered an Order of Temporary Detention ordering that Compean be held without bond until January 9, 2013. Order, United States v. Compean, et al., 7:12-cr-340 (W.D. Tex. Dec. 26, 2012), ECF No. 16. Judge Counts ordered "the attorney for the Government to notify the appropriate court, probation or parole official, or state or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service so that the custody of the Defendant can be transferred[.]" Id. On January 9, 2013, after Compean waived his right to a detention hearing, Judge Counts granted the Government's motion for detention and ordered that Compean be detained. Order, United States v. Compean, et al., 7:12-cr-340 (W.D. Tex. Jan. 9, 2013), ECF No. 30.

Pursuant to a negotiated plea agreement, on February 11, 2013, Compean pled guilty to Counts One, Four, and Five of the federal Indictment, and the Government dismissed Counts Six through Ten. On May 16, 2013, the Honorable Robert Junell, United States District Judge for the Western District of Texas, sentenced Compean to terms of imprisonment of sixty months on Count One and ninety-seven months on Count Four, to be served concurrently, as well as twenty-four months imprisonment on Count Five, to be served consecutively to Counts One and

Four. (Doc. 9-2, pp. 32–38.) Thus, Compean received a sentence with an aggregate term of imprisonment of 121 months. Judge Junell ordered that Compean remain in custody pending service of his sentence. (Id.) Compean is currently serving this sentence at D. Ray James, and he has a projected release date of March 15, 2022.

At the time of his December 7, 2012, arrest on and throughout his federal case, Compean also had additional state traffic citation warrants outstanding in Justice Court, Precinct 2, Collin County, Texas. These warrants were filed in Justice Court Case Numbers 02-TR-12-00497 (expired driver's license) and 02-TR-12-00796 (violation of promise for failure to appear). (Id. at pp. 20–27.) Though these misdemeanor warrants were issued on March 12, 2012, they were not executed when Compean was arrested on December 6, 2012. (Id.) Though the Court does not have complete records for these misdemeanor cases, it appears that Compean was never actually arrested on these warrants. (Id.) On June 3, 2013, approximately two weeks after Compean was sentenced in his federal case, he entered pleas of nolo contendere in Case Numbers 02-TR-12-00497 and 02-TR-12-00796. (Id. at pp. 21, 25.) Compean received a fine of $55.00 in Case Number 02-TR-12-00497 and $140.00 in Case Number 02-TR-12-00796. (Id.) It appears Compean paid these fines by some method, as the docket sheets list his fine amount balance as "$0.00." (Id.) The Justice Court did not sentence Compean to any time in custody on these charges. However, the case dockets list his warrant status as "Time Served", and his release is noted as "Time Served" on a document signed by Judge Terry L. Douglas, the Justice of the Peace for Precinct 2 of the Collin County Justice Court. (Id. at pp. 21, 25, 40.)

## DISCUSSION

In his Section 2241 Petition, Compean generally argues that he should be awarded credit toward his federal sentence for the time he was in custody after his arrest on December 7, 2012.[3] (Doc. 2.)  He contends that he was able to obtain a bond on the state traffic charges, and he only remained in custody after his arrest so that he could be turned over to federal authorities.  (Id. at pp. 3–4.)  Further, in his Reply, Compean argues that any time he spent in custody could not have been credited toward any state sentences, because those sentences were for Class C misdemeanors, which are only punishable by a fine under Texas law.  (Doc. 12, pp. 2–3.)  Thus, Compean reasons, the Collin County Justice Court did not impose (and could not have imposed) a sentence of detention.  (Id.)

Respondent maintains that this Court should not reach the merits of Compean's arguments because he failed to exhaust his administrative remedies concerning his sentence calculation.  (Doc. 9, pp. 5–8.)  Respondent offers the Affidavit of Glenda Dykes, an Administrative Remedy Clerk with the BOP, in support of this argument.  (Doc. 9-1.)  Respondent also contends that Compean cannot receive the months of credit he seeks toward his federal sentence because he already received credit for that time toward state sentences.  (Doc. 9, pp. 8–10.)  For this argument, Respondent primarily relies upon the Affidavit of Forest Kelly, a Correctional Programs Specialist at the BOP's Designation and Sentence Computation Center.  (Doc. 9-2.)

---

[3]  Though Compean at times only requests credit from December 10, 2012, forward, at other times he appears to request all time that he spent in custody after his arrest.

## I.       Whether Compean Exhausted his Administrative Remedies

### A.       Legal Requirements for Exhaustion

The Eleventh Circuit Court of Appeals has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect.  Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional.").   Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'"  Id. (citing Santiago-Lugo, 785 F.3d at 475).  Failure to exhaust administrative remedies is an affirmative defense and inmates are not required to specially plead or demonstrate exhaustion in their complaint.  Jones v. Bock, 549 U.S. 199, 216 (2007).   However, the normal pleading rules still apply, and dismissal is appropriate when an affirmative defense appears on the face of a complaint—making it clear that a prisoner cannot state a claim for relief.  Id. at 214–15.   Thus, when a party admits in his complaint or petition that he has not exhausted the grievance process, dismissal is warranted. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to [42 U.S.C.] § 1997e(a) if it is clear from the face of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[4]

The United States Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's

---

[4] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

B.     **Standard of Review for Exhaustion**

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available

administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

**C.      Analysis of Compean's Efforts at Exhaustion**

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures. (Doc. 9-1, p. 1.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by filing a formal complaint with the Warden using a BP-9 form. (Id. at p. 2.) An inmate may appeal the Warden's response to the inmate's complaint by filing a BP-10 firm with the Regional Director. (Id.) If the Regional Director denies the appeal, the inmate may then file a final appeal with the Office of General Counsel in Washington, D.C. by submitting a BP-11 form. (Id.)

The evidence before the Court establishes that Compean has not pursued any administrative solutions related to the allegations raised in his Petition. (Id. at pp. 1–2, 7.) Compean's claims concern BOP-related matters, which must be appealed through the above-described process and which Compean failed to do. Additionally, based on Respondent's submissions, it appears that the BOP's administrative remedies are available to Compean, and he has raised no contentions to the contrary. In his Petition, Compean did not indicate whether he pursued any administrative remedies before filing suit. (Doc. 2.) However, Respondent asserts that Compean has never pursued any of the available administrative measures at any of the required levels while in BOP custody. (Doc. 9-1.) Ms. Dykes, an administrative remedy clerk for the BOP, avers that her review of Compean's records indicates that he has never submitted

any administrative remedies during his incarceration, and she attaches documentation from the BOP's database confirming the same. (Id. at pp. 1, 7.)

In his Reply, Compean does not deny that he failed to pursue the BOP's administrative remedies or argue that those remedies were unavailable to him. (Doc. 12, pp. 3–4.) Rather, he argues that the Court should "dispense [sic] the exhaustion requirement." (Id. at p. 4.) Petitioner's arguments on this front are nonsensical. He argues that, because he is incarcerated in a private facility, D. Ray James staff would not have the ability to modify his sentence. (Id.) However, as laid out above, D. Ray James' grievance procedure includes avenues to bring matters directly before BOP officials, including appeals to the Regional Director and BOP's Office of General Counsel. Compean also argues that pursuing administrative remedies would be futile because the BOP has notified his attorney that there is no error in his sentence calculation. However, his belief that the BOP's review process would have been futile cannot excuse his failure to pursue that process. Higginbottom, 223 F.3d at 1261. As for Compean's argument that his case presents "exceptional" circumstances, (doc. 12, p. 4), the United States Supreme Court has rejected any "special circumstances" exception to exhaustion requirements. Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856–58 (June 6, 2016).

Thus, even accepting Compean's account as true, under the first Turner step, he failed to pursue the prison's available administrative remedies prior to filing his Petition. Moreover, if the Court were to proceed to the second Turner step, the Court finds that Respondent's account of Plaintiff's exhaustion to be reliable and accurate. Ms. Dykes' affidavit and supporting materials reveal that administrative processes were available to Compean to raise the claims regarding his sentence calculation, but he utterly failed to pursue those remedies.

Compean failed to properly exhaust his available administrative remedies prior to filing this Petition. Consequently, the Court should **DISMISS** Compean's Petition **without prejudice**.

## II.     Whether Compean is Entitled to Additional Credit Toward his Federal Sentence

A dismissal for failure to exhaust would afford Compean and the BOP the opportunity to address Compean's claims through the full administrative process prior to litigating those claims in this Court. Thus, the Court need not express an opinion on the merits of Compean's claims and the BOP's sentence calculation. However, if the Court rejects the recommendation that this matter be dismissed for lack of exhaustion, in order to resolve the substance of the parties' positions, the Court will need further argument and documentation than that presented in the parties' filings to date. Moreover, at least on this record, the arguments that Respondent makes in his brief and Correctional Program Specialist, Mr. Kelly, offers in his Affidavit appear fundamentally flawed. In essence, Respondent takes the position that Compean's approximately six months of custody was credited toward sentences issued by the Collin County Justice Court, even though Texas Justice Courts have no jurisdiction to enter custodial sentences, and the state charges Compean faced are only punishable by a fine. Moreover, the documentation before the Court does not indicate that the Justice Court actually sentenced Compean to any time in custody.

Section 3585 of Title 18 of the United States Code, which pertains to "credit for prior custody," is controlling for making credit determinations for sentences imposed under the Sentencing Reform Act of 1984. This statute provides:

> (a) Commencement of sentence.  A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit of Prior Custody.  A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences —

> (1) as a result of the offense for which the sentence was imposed; or

> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

> <u>that has not been credited against another sentence</u>.

18 U.S.C. § 3585 (emphasis added).  Pretermitting the critical question of whether the time Compean spent in custody from December 7, 2012, to June 3, 2013, has been credited against another sentence, this custody likely meets the initial language of either Subsection (b)(1) or (b)(2).

It appears Compean's detention from December 7, 2012, to June 3, 2013, may have been as a result of his federal charges, i.e., "as a result of the offense for which the sentence was imposed[.]"  18 U.S.C. § 3585(b)(1).  The Western District of Texas issued the federal criminal complaint, arrest warrant, and writ of habeas corpus *ad prosequendum* on December 6, 2012, the day before Compean's arrest on state charges.  While the Greenville Police Department arrested Compean on state charges in Justice Court Case Numbers 01-TR-11-05935, 01-TR-11-05936, and 01-TR-12-00382, he contends that he received a bond in those cases and only remained in detention due to the federal charges against him.  Indeed, the dockets from these three cases indicate that the Justice Court gave Compean a bond, which he met.  (Doc. 9-2, pp. 9, 13, 17.)[5] Further, Texas law indicates that Compean could not have been detained for an extended period of time on these Class C misdemeanor charges.  Tex. Code Crim. Proc. Ann. § 17.151 ("A defendant who is detained in jail pending trial of an accusation against him must be released

---

[5]  As stated above, it appears Compean was never actually arrested on the state charges in Justice Court Case Numbers 02-TR-12-00497 and 02-TR-12-00796 and had not been arrested on those charges at the time of his transfer to federal custody.  The docket reports for these two cases indicate the warrants were sent to CCSO (presumably Collin County Sheriff's Office) on January 23, 2013.  (Doc. 9-2, pp. 21, 24.)

either on personal bond or by reducing the amount of bail required if the state is not ready for trial of the criminal action for which he is being detained within . . . five days from the commencement of his detention if he is accused of a misdemeanor punishable by a fine only."); State v. Granville, 373 S.W.3d 218, 225 (Tex. App. 2012), *aff'd*, 423 S.W.3d 399 (Tex. Crim. App. 2014) ("[Defendant] was subject to being released quickly, given that he was arrested for a class C misdemeanor."). Further, as explained in greater detail below, Compean's state offenses were only punishable by a fine and not a sentence of detention. Thus, though this Court does not have full records of Compean's state cases, it is entirely plausible that Compean remained detained after his arrest, not due to his state charges, but instead "as a result of the offense for which the [federal] sentence was imposed[.]" 18 U.S.C. § 3585(b)(1).

Even if Compean was detained due to the charges in Case Numbers 01-TR-11-05935, 01-TR-11-05936, and 01-TR-12-00382, he was released from detention on those charges, at the latest, on December 10, 2012. (Doc. 9-2, pp. 9, 13, 17.) At that time, he had not been arrested on his other state charges, and he was released to the custody of the United States Marshals to answer the federal charges against him. Moreover, while Compean was originally transferred to federal custody pursuant to the writ of habeas corpus *ad prosequendum*, that writ only pertained to the federal criminal complaint case, and that case was closed on December 12, 2012. Docket, United States v. Compean, 7:12-mj-453 (W.D. Tex. Dec. 6, 2012). It appears Compean remained in custody, not under any state orders, but pursuant to United States Magistrate Judge Count's Detention Orders. See Orders, United States v. Compean, *et al.*, 7:12-cr-340 (W.D. Tex. Dec. 26, 2012 & Jan. 9, 2013), ECF Nos. 16, 30. This further supports the argument that Compean's time in custody while awaiting the resolution of his federal case resulted from his federal charges.

Even if Compean's detention from December 7, 2012, to June 3, 2013, was somehow a result of his state charges, those charges are "charges for which [Compean] was arrested after the commission of the offense for which the [federal] sentence was imposed." 18 U.S.C. § 3585(b)(2). According to the Indictment in the Western District of Texas, Compean committed the federal offenses for which he was sentenced on or about: December 2011 through December 10, 2012, (Count One), and September 11, 2012, (Counts Four and Five). Indictment, United States v. Compean, et al., 7:12-cr-340 (W.D. Tex. Dec. 19, 2012), ECF No. 9. Compean was arrested on his state warrants on December 7, 2012. (Doc. 9-2, p. 1.) Thus, the commission of his federal offenses predated his arrest on his state charges.

However, Respondent argues that, regardless of whether Compean's disputed time in custody satisfies the initial language of 18 U.S.C. § 3585(b)(1) or (2), it does not satisfy the qualifying language that the custody "has not been credited against another sentence." Specifically, Respondent argues that the time Compean spent in custody from December 11, 2012, to June 3, 2012,[6] was credited toward the sentences he received in Collin County, Texas, Case Numbers 02-TR-12-00497 and 02-TR-12-00796. (Doc. 9-2, pp. 2–3.) In Case Number 02-TR-12-00497, Compean was found guilty of driving on an expired driver's license, a Class C misdemeanor, and was sentenced to a $55.00 fine. (Id. at pp. 20–22, 40.) In Case Number, 02-

---

[6] Because Compean focused his arguments on time spent in custody after December 11, 2012, Respondent primarily addressed the same in his Response. However, Respondent contends that the time Compean spent in custody from December 7, 2012, to December 11, 2012, was credited toward Compean's sentences in Collin County Justice Court Case Numbers 01-TR-11-05935, 01-TR-11-05936, and 01-TR-12-00382. Attributing these four days to these three cases raises many of the same questions (discussed below) that are raised by attributing the time after December 11, 2012, to Case Numbers 02-TR-12-00497 and 02-TR-12-00796. Case Numbers 01-TR-11-05935, 01-TR-11-05936, and 01-TR-12-00382, like Case Numbers 02-TR-12-00497 and 02-TR-12-00796, involved Class C misdemeanors, for which the Justice Court could not have imposed a custodial sentence. Additionally, it appears from the limited documents before this Court that the Justice Court imposed sentences of fines, not custody, in these three cases. Thus, while the dockets of these cases include notations of "time served", it is not clear what, if any, time Compean actually served on any sentences imposed in these three cases. Consequently, Respondent may be hard pressed to demonstrate that the time Compean spent in custody from December 7 through 11, 2012, was actually "credited against another sentence."

TR-12-00496, Compean was found guilty of violating a promise to appear, a Class C misdemeanor, and was sentenced to a $140.00 fine. (Id. at pp. 24–26, 40.)

While Mr. Kelly states that the Texas court sentenced Compean to "time served", (doc. 9-2, p. 2), the documents that he has attached to his affidavit only include the term "Time Served" next to Compean's "Warrant Status" and "Release." (Id. at pp. 20-26, 40.) Thus, it is far from evident that the Collin County Justice Court actually sentenced Compean to "time served", and, even if it had, to how much time. Moreover, it does not appear that the Justice Court could have sentenced Compean to any custody. As noted above, Texas Justice Courts have no jurisdiction over criminal charges punishable by confinement or imprisonment. Tex. Code Crim. Proc. Ann. § 4.11; Sullo & Bobbitt, PLLC, 2013 WL 1949835, at *4; Cooksey, 377 S.W.3d at 904. Additionally, the offenses of driving on an expired driver's license and violating a promise to appear are both Class C misdemeanors. Tex. Transp. Code Ann. § 521.457; Tex. Transp. Code Ann. § 543.009; (see also doc. 9-2, pp. 20–26 (charging offenses as Class C misdemeanors).) In Texas, Class C misdemeanors cannot be punished by any confinement and can only be punished by a fine not to exceed $500.00. Tex. Penal Code Ann. § 12.23. Even if some of the time that Compean was in custody could have been used to discharge the payment of his fines, it appears he would have received a credit of at least $100.00 for every day of confinement. Tex. Code Crim. Proc. Ann. § 45.048; Tex. Att'y Gen. Op. JC-0246 (2000) (Pursuant to article 45.048 of the Texas Code of Criminal Procedure, defendant in a county jail for failure to pay a fine assessed for a Class C misdemeanor should be credited at the rate of not less than $100.00 per day for each day or part of a day served in jail). Thus, even under these circumstances, Compean would have discharged his $195.00 in fines in Case Numbers 02-TR-12-00497 and 02-TR-12-00796 in two days, at the most.

Mr. Kelly cites Program Statement 5880.28 of the Sentence Computation Manual. (Doc. 9-2, p. 2.) Under that Statement, "[a] sentence imposed by a court for 'Time Served,' means that all time spent in official detention (prior custody time), as a result of the offense for which sentence was imposed, is included in the 'Time Served' sentence which the court imposed and cannot be awarded to any other sentence." (Doc. 9-2, p. 48.) Mr. Kelly contends that the time Compean was in custody "from December 7, 2012[,] through June 2, 2013, is considered time that was credited against his 'Time Served' sentences, and cannot be credited against his federal sentence under § 3585(b)." (Id. at p. 3.) However, as explained above, it does not appear that the Justice Court actually imposed a custodial sentence, "time served" or otherwise, or that it could have done so. It is even more doubtful that Compean spent December 7, 2012, to June 2, 2013, in custody "as a result of the offense for which the sentence was imposed", i.e., due to the Class C misdemeanors, as Program Statement 5880.28 requires. Mr. Kelly's application of Program Statement 5880.28 and resulting sentence calculation is based on the premise that Compean spent nearly six months in custody "as a result of" traffic offenses for which the Justice Court must grant bond within five days and on which the Justice Court had no legal authority to impose a custodial sentence. Tex. Code Crim. Proc. Ann. § 17.151; Tex. Penal Code Ann. § 12.23. Moreover, given that the "time served" notations in Compean's state records were entered by a Texas court as to Texas offenses and convictions, the law of Texas, rather than Program Statement 5880.28, should be consulted to determine what time in custody, if any, the Texas Justice Court credited toward Compean's state sentences.[7]

Respondent and Mr. Kelly also explain that, while Compean was in the United States Marshals' custody from December 11, 2012, until May 16, 2013, he was only in that custody

---

[7] Of course, the question of how to impose and execute Compean's federal sentence rests with federal authorities. Butler v. Warden, FCC Coleman-Medium, 451 F. App'x 811, 812 (11th Cir. 2011).

under a federal writ of habeas corpus *ad prosequendum*. "'If a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary. The prisoner will be returned to state custody at the completion of the federal proceedings or the federal sentence if the federal government wishes to execute it immediately.'" Powell v. Jordan, 159 F. App'x 97, 99–100 (11th Cir. 2005) (quoting Causey v. Civiletti, 621 F.2d 691, 693 (5th Cir. 1980)). "A writ of habeas corpus *ad prosequendum* is only a loan of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction." Civiletti, 621 F.2d at 693. As BOP Program Statement 5880.28 explains, "[t]ime spent in custody under a writ of habeas corpus from non-federal custody will not in and of itself be considered for the purpose of crediting presentence time."

As an initial matter, it is not clear that Compean was primarily in state custody from December 11, 2012, until May 16, 2013. When he was transferred to federal custody, he had entirely satisfied whatever sentence he received in Justice Court Case Numbers 01-TR-11-05935, 01-TR-11-05936, and 01-TR-12-00382. Further, he had not been arrested in Case Numbers 02-TR-12-00497 and 02-TR-12-00796, and no orders of detention had been issued in those cases. Thus, it is unclear why Respondent contends Compean was in state custody after December 11, 2012. The Western District of Texas issued the writ of habeas corpus *ad prosequendum* prior to Compean's release on state charges (indeed, it appears the writ was issued prior to his arrest). Moreover, that writ only applied to Compean's federal criminal complaint case, Case Number 7:12-mj-453, and that case was terminated on December 19, 2012. Docket, United States v. Compean, 7:12-mj-453 (W.D. Tex. Dec. 6, 2012). Compean remained in custody pursuant to United States Magistrate Judge Count's detention orders, and District Judge Junell ordered that Compean remain in custody pending service of his federal sentence. Orders, United States v.

_Compean, et al._, 7:12-cr-340 (W.D. Tex. Dec. 26, 2012 & Jan. 9, 2013), ECF Nos. 16, 30; (Doc. 9-2, pp. 32–38.)

Moreover, while time spent in "secondary" federal custody on a writ of habeas corpus _ad prosequendum_ is not "in and of itself" (i.e., automatically) counted toward a federal sentence, such time also is not automatically discounted. Rather, the inquiry must still be made if such time was actually credited toward a state sentence. Indeed, in <u>Butler</u>, the case cited by the Respondent, (<u>see</u> doc. 9, p. 10), the Eleventh Circuit explained that, "when the federal government takes possession of a state prisoner pursuant to a writ of habeas corpus _ad prosequendum_, the state's custody is not interrupted." 451 F. App'x at 812. However, the court went on to further hold that "if [the petitioner] was detained without credit toward[] any sentence prior to serving his federal sentence, he would be entitled to credit on his federal sentence under 18 U.S.C. § 3585(b)(2)." <u>Id.</u> The court explained that, "though the record indicates that [the petitioner] received a total sentence of 30.3 months' imprisonment, the record does not clearly show what sentences [the petitioner] received in each of his four concurrent state judgments." <u>Id.</u> at 813. Therefore, the Eleventh Circuit vacated the district court's judgment and remanded the case with instructions to "expand the record and calculate any potential uncredited days of detention." <u>Id.</u>

Similarly, in this case, it appears that the BOP must take a closer look at a more fully established record to assess whether Compean was actually detained without credit toward any sentence prior to the commencement of his federal sentence. Compean's administrative grievance process will provide the BOP with that opportunity.

### III. Leave to Appeal *in Forma Pauperis*

If the Court dismisses Compean's Petition for failure to exhaust, the Court should also deny him leave to appeal *in forma pauperis*. Though Compean has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Compean's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

# CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS without prejudice** Compean's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Compean leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Compean and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 29th day of September, 2017.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA